CECIL L. NICKMAN AND LAVAGHN NICKMAN, APPELLANTS,
v. CHARLES L. KIRSCHNER AND LOIS B. KIRSCHNER,
APPELLEES.

273 N. W. 2d 675

Filed January 10, 1979. No. 41705.

Nye, Hervert, Jorgensen & Watson, P.C., for appellants.

Parker & Grossart, for appellees.

Heard before SPENCER, C. J., Pro Tem., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and RIST, District Judge.

RIST, District Judge.

This is an action in which plaintiffs-appellants seek injunctive relief against defendants-appellees enjoining the latter from increasing the flow and volume of water from lands farmed by defendants over and through plaintiffs' lands.

Defendants are the owners of the northwest quarter of Section 33, Township 12 North, Range 16 West of the 6th P.M., in Buffalo County, Nebraska, and lease adjacent thereto and on the west side thereof the north one-half of Section 32, Township 12 North, Range 16 West.

Plaintiffs are the owners of the west one-half of the northeast quarter and the northwest quarter of the southeast quarter, all in Section 4, Township 11 North, Range 16 West of the 6th P.M. in said county, which land lies approximately one-half mile south and immediately east of defendants' lands above described. The South Loup River bisects plaintiffs'

lands running generally west to east in that area.

At all times material herein there was a natural watercourse near the southeast corner of the land owned by defendants which runs a short distance east then southerly across lands belonging to owners not parties to this action and onto and through plaintiffs' land to the river.

In 1918 a culvert was placed under the north-south county road at the southwest corner of the land owned by defendants and a 30-inch cement tube was extended easterly therefrom approximately one-quarter mile along defendants' south boundary to a point where it connected with the natural watercourse above described. The purpose of the culvert and tube was to drain surface water from a lagoon or low area of approximately 80 acres located on the land both owned and leased by defendants. This low area had no natural drainage and would from time to time hold rain and runoff waters until the same evaporated. Surface waters from a drainage area of approximately 1,625 acres also flowed into this tube.

Over the years the cement tube began to deteriorate and break away in the eastern portion thereof causing some washouts and silting so that it did not drain efficiently. In the summer of 1976 defendants replaced the culvert under the road with the approval of the Buffalo County authorities and replaced the cement tube extending easterly with an open ditch having a 12-foot flat bottom and variable height sidewalls. Before the construction of this ditch was completed plaintiffs instituted this action and work on the ditch halted pending its outcome.

Plaintiffs, in their second amended petition, plead what they denominate as two causes of action. The first cause alleges in substance the construction in 1918 of the 30-inch tube, the removal thereof, and its replacement with the flat bottom ditch in 1976; that such construction increased the velocity and volume

of both irrigation and natural waters onto plaintiffs' lands and damaged the same by increasing the deposit of silt and causing erosion. Plaintiffs in their second cause incorporate the allegations of their first cause of action and plead additionally that defendants negligently constructed said open ditch, thereby causing the damages complained of.

Trial was had during which the trial judge viewed the premises. Subsequent thereto the court entered its judgment finding defendants had the legal right to drain the surface water from the lagoon or low area to the natural drain which ran through the defendants' property, citing the case of Arthur v. Glover, 82 Neb. 528, 118 N. W. 111, as authority therefor. The court further found that while the artificial drain represented by the ditch was not in the exact direction of natural drainage it did result in the surface water entering a natural watercourse upon plaintiffs' property at or about the same place as surface waters would naturally drain and that defendants' rights of drainage were not limited by the precise size of the cement tube formerly used by defendants. The trial court denied the relief sought in plaintiffs' first cause of action.

With respect to plaintiffs' second cause of action, the trial court found that although plaintiffs' real estate had been damaged, defendants had not yet completed the construction of their ditch, that they were entitled to a reasonable time in which to do so, that the second cause of action was premature, and the court dismissed it without prejudice.

From this judgment, plaintiffs have appealed.

This being an action in equity, it is triable de novo in this court subject to the rule that where the trial court made a personal inspection of the premises and the physical facts, and where oral evidence is conflicting and cannot be reconciled, this court will consider the fact that such examination was made and considered by the trial court and that such court

observed the witnesses and their demeanor in testifying and must have acepted one version of the facts rather than the other. Erickson v. Tyler, 186 Neb. 743, 186 N. W. 2d 123.

A consideration of the evidence justifies the conclusion that no irrigation waters of any substance ran through the former cement tube or the new open ditch and onto plaintiffs' lands but rather that surface waters from the drainage area previously described, including the lagoon or low area, are the only waters which flowed through the same. This condition has existed since the year 1918. It is also clear from the evidence that the construction of the open ditch, as of the time of trial, had not been completed in accordance with the plans therefor.

The evidence further shows that drainage through the open ditch in its present condition has resulted in some additional silting upon plaintiffs' lands and that the velocity of the water flowing from the open ditch into the drainway has been increased over that which formerly flowed through the cement tube.

The trial court correctly announced the applicable rule to be that set forth in Arthur v. Glover, *supra*, which case cited Aldritt v. Fleischauer, 74 Neb. 66, 103 N. W. 1084, to the effect that "An owner of land has the right in the interest of good husbandry to drain ponds or basins thereon of a temporary character, and which have no natural outlet or course of flow, by discharging the waters thereof by means of an artificial channel into a natural surface-water drain on his own property, and through such drain over the land of another proprietor in the general course of drainage in that locality, even though the flow in such natural drain is thereby increased over the lower estate, and provided that this is done in a reasonable and careful manner and without negligence." The fact that this ditch drained a basin or low area located partially upon land owned by defendants and partially upon land owned by others,

but leased by defendants, does not change this rule as two or more adjoining landowners may lawfully join in the construction of a ditch solely upon the premises of one where the object and purpose is to drain a pond situated partly on the lands of all of said proprietors. Arthur v. Glover, *supra*.

The same rule applies to the surface waters which flow to the ditch from the 1,625-acre drainage area and thence into the natural drainway here involved.

Plaintiffs argue that an artificial channel into which surface waters are drained must itself follow the natural course of drainage, and cannot vary therefrom. Plaintiffs assert this is what defendants have done.

This is not a correct assessment of the law. The same argument was made in Bures v. Stephens, 122 Neb. 751, 241 N. W. 542, in which the court said: "The appellant contends that the ditch does not follow the general course of drainage; that without the ditch the water would never run there. That is undoubtedly true, for without it the basin would not drain. We are of the opinion that the ditch carries the water in the general course of drainage." The trial court in the instant case found the ditch upon defendants' land was consistent with the general course of drainage of the area involved. This is a sufficient compliance with the rule. It is also clear that the natural watercourse into which the ditch drains is the only one reasonably accessible to defendants.

It should be noted that the surface waters here involved have flowed into the cement tube and the open ditch which replaced it since 1918 and even if the tube and ditch were at material variance with the general course of drainage, defendants have a prescriptive easement for the purpose of such drainage. The fact that defendants replaced the broken and silted cement tube with a ditch to regain effi-

cient drainage does not destroy the easement. Bures v. Stephens, *supra.*

Plaintiffs argue that intermittent use of the tube and ditch affords no basis for an easement, claiming such use is not a continuous use that would give rise to a prescriptive right. The correct rule as to continuity of use is that it can be stated only with reference to the nature and character of the right claimed. Uninterrupted use of the right as necessary is a continuous use. 25 Am. Jur. 2d, Easements and Licenses, § 56, p. 464; 28 C. J. S., Easements, § 13, p. 648. Where drainage of surface waters into an artificial drain occurs only on those occasions when such waters exist in sufficient quantity to so flow, such use would be continuous for that purpose. This is the case here.

Plaintiffs urge defendants have no right to increase the velocity and volume of water in the ditch over what it had been in the former tube when such increase damages plaintiffs. As to such argument we note the following. First, additional waters are not involved. The volume is always the amount of surface waters within the drainage area and lagoon described earlier. The variance in amount depends only upon rainfall or snowmelt within that area. Second, volumes and velocities which increase from the collection of surface waters in an artificial drain constructed within the scope of the rule of Arthur v. Glover, *supra*, are a burden which the subservient estate must accept. Aldritt v. Fleischauer, *supra*; Todd v. York County, 72 Neb. 207, 100 N. W. 299; Erickson v. Tyler, 186 Neb. 743, 186 N. W. 2d 123. Third, with respect to the efficiency of the tube or ditch, defendants are entitled to maintain its efficiency when such efficiency is curtailed by silting or breakdown. Velocities which increase as a result of proper maintenance or construction are likewise a burden which must be accepted by the subservient estate. Bures v. Stephens, *supra*. Fourth,

it is the obligation of the landowner collecting the surface waters in the artificial drain to do so in a reasonable and careful manner and without negligence, and if he is negligent and thereby damages the subservient land, the owner of the latter is entitled to relief. Arthur v. Glover, *supra*.

This case, therefore, comes to the question of whether defendants were negligent in the construction of the ditch and what, if anything, the trial court should do about it. Again, the evidence shows construction of the ditch has not been completed and the trial court found plaintiffs were damaged as a result of the ditch in its present condition.

It is clear that a final determination of whether the ditch has been constructed in a reasonable and careful manner and without negligence cannot be made until that construction has been completed. The trial court concluded the second cause of action, alleging negligent construction, was premature and dismissed said cause without prejudice. If this disposition is affirmed it might require a second action at the time of the completion of the ditch to determine whether or not the construction was proper.

We believe the trial court should retain jurisdiction of the second cause of action, determine the appropriate construction criteria for the ditch, grant defendants an adequate period of time to so construct it, and if so constructed, then to dismiss the cause, otherwise to grant plaintiffs such relief as would be appropriate. Such retention of jurisdiction is proper. It is within the power of the court, it will prevent a possible multiplicity of suits, and it affords an orderly and timely procedure to protect the rights of both parties. Such procedure has been approved and ordered by this court in similar cases. See Muff v. Mahloch Farms Co., Inc., 184 Neb. 286, 167 N. W. 2d 73; Nickerson Township v. Adams, 185 Neb. 31, 173 N. W. 2d 387.

We therefore affirm the trial court's denial of

plaintiffs' first cause of action, reverse the dismissal of plaintiffs' second cause of action, and remand the latter to the trial court for further proceedings in accordance with this opinion.

AFFIRMED IN PART, AND IN
PART REVERSED AND REMANDED
FOR FURTHER PROCEEDINGS.